UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRAD HUFFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:24-cv-01398-GCS |
| ) | |
| NATIONS LENDING ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Three motions are presently pending before the Court. Defendant, Nations Lending Corporation, filed a Motion to Transfer Case along with a Memorandum in Support on June 28, 2024. (Doc. 12, 13). Later, on September 5, 2024, Defendant filed a Motion to Deem Plaintiff's Failure to File a Timely Response a Consent to Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a). (Doc. 26). Shortly thereafter, Plaintiff Brad Huffman filed a Motion to Remand to State Court on September 16, 2024. (Doc. 27). Defendant filed a Response to Plaintiff's Motion to Remand on October 1, 2024. (Doc. 31). Plaintiff then filed a Response to Defendant's Motion to Transfer Case on October 15, 2024. (Doc. 32). Defendant filed a Reply to Plaintiff's Response on October 22, 2024. (Doc. 33). For the reasons stated below, all three motions are **DENIED**.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff initially filed his Complaint against Defendant in the Circuit Court of the Twentieth Judicial Circuit of St. Clair County, Illinois, on April 19, 2024. (Doc. 1-1, p. 1).

The Complaint alleges that Defendant violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILL. COMP. STAT. § 115/1 *et seq.*, for failing to pay Plaintiff's wages beginning in October 2022 until his termination on or about May 1, 2023, for work he had performed. *Id.* at p. 2. Plaintiff seeks "unpaid wages, underpaid wages, statutory penalties equal to 5% of such unpaid or underpaid wages for each month during which such underpayments have remained unpaid, in an amount reasonable and equitable and in excess of $10,000.00, plus reasonable attorney's fees and costs of this suit." *Id.* at p. 3.

Relevant to the Court's decision on Defendant's Motion to Transfer are the Forum Selection Clauses contained in Plaintiff's Employment Agreement and Addendum. Plaintiff's October 12, 2022, Employment Agreement provides:

> **(i) Governing Law; Jurisdiction and Venue.** This Agreement, for all purposes, to the maximum extent permitted by applicable law, shall be construed in accordance with the laws of Ohio without regard to any conflicts of law principles . . . . Any action or proceeding by either of the parties to enforce this Agreement shall be brought only in accordance with the arbitration provision contained within this Agreement except that action may be brought in a state or federal court located in the state of Ohio or the state of Employee's primary residence, if different, for the purposes of obtaining a restraining order or injunction against a violation of provisions of this agreement or to enforce a judgment rendered in accordance with the results of arbitration between the parties. The parties hereby irrevocably submit to the non-exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue . . . .

(Doc. 13-1, p. 11-12).

Plaintiff signed an Addendum to his employment agreement on March 6, 2023. (Doc. 13-2, p. 2). The Addendum states:

> (e) Any disputes arising out of this agreement are subject to the dispute resolution provisions contained within Employee's Agreement including

>   the agreement to subject disputes to binding arbitration and the application of Ohio law and venue. No action regarding this agreement except to enforce a judgment for the payment of money may be filed in any court.

*Id.*

On May 28, 2024, Defendant filed a Notice of Removal, pursuant to 28 U.S.C. §§ 1441(b), 1446 and 1332. (Doc. 1). Defendant asserts that removal is proper on the basis of diversity jurisdiction. *Id.* at p. 1-2. Plaintiff is a citizen of the State of Illinois. (Doc. 1-1, p. 1). Defendant is a corporation organized under the laws of Ohio and maintains its principal place of business in Ohio. (Doc. 1, p. 2). Therefore, Defendant is a citizen of the state of Ohio for purposes of diversity of citizenship. *See* 28 U.S.C. § 1332(c)(1). Defendant also claims that removal was timely as it had yet to be served when the Notice of Removal was filed. *Id.* at p. 2. Venue is proper as the Southern District of Illinois is the district and corresponding division to the place where Plaintiff's State Court action was pending. *See* 28 U.S.C. § 1441(a). Lastly, Defendant asserts that the amount in controversy requirement has been met as Plaintiff did not specify the exact damages amount sought but requests a reasonable amount "in excess of $10,000." (Doc. 1, p. 3).

MOTION FOR REMAND

**A.      Legal Standards**

A defendant in state court may remove a case to federal district court only if the district court has original jurisdiction over the action. *See* 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removal statute, 28 U.S.C. § 1441, is to be construed narrowly and doubts concerning removal are resolved in favor of remand. *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing *Doe v. Allied-*

*Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). The burden of establishing federal jurisdiction falls on the party seeking removal. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2007); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006).

Here, subject matter jurisdiction could only be based on diversity of citizenship. *See* 28 U.S.C. § 1332. The statute requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs. *Id.* When assessing a motion for remand based on diversity jurisdiction, courts "may look to post-filing events, including production of evidence during discovery, to the extent they 'clarify what the plaintiff was actually seeking' at the beginning of the case." *Sykes v. Cook Inc.*, 72 F.4th 195, 209-210 (7th Cir. 2023) (citing *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011)).

**B.   Discussion**

As an initial matter, the Court will address Defendant's argument that Plaintiff untimely filed his Motion to Remand. (Doc. 31, p. 1-2). Because Plaintiff challenges subject matter jurisdiction, *i.e.*, diversity jurisdiction, the motion is not subject to the ordinary 30-day period.

Unlike motions to remand "on the basis of any defect other than subject matter jurisdiction," which must be brought within 30 days after the filing of the notice of removal, the federal removal statutes do not limit remand based on subject matter jurisdiction to any time frame. *See, e.g.*, 28 U.S.C. § 1447(c) (stating that "[i]f at *any time* before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") (emphasis added)). Moreover, subject matter jurisdiction

cannot be waived. *See, e.g.*, FED. R. CIV. PROC. 12(h)(3) (stating that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). Plaintiff challenges the amount in controversy requirement, stating that "Plaintiff opposes the removal of this matter, as the jurisdictional amount will not be met. . . . The claim is less than $75,000, so this matter should be remanded." (Doc. 27, p. 1). Accordingly, the Court will not deny Plaintiff's Motion to Remand on the basis of untimeliness.

Turning to the merits of Plaintiff's motion, Plaintiff contends that he has only made a claim for "wages/commissions of $10,000 plus attorney's fees and expenses." (Doc. 27, p. 1). Defendant disagrees with Plaintiff's contention, arguing that Plaintiff has failed to demonstrate with legal certainty that the claim is really for less than the jurisdictional amount. (Doc. 31, p. 1-3). Ultimately, the Court agrees with Defendant. Defendant has met its burden in demonstrating the jurisdictional amount by a preponderance of the evidence. Additionally, Plaintiff has failed to show with legal certainty that Defendant's estimate is inaccurate. The Court therefore has subject matter jurisdiction over this dispute, and remand would be improper.

The proponent of jurisdiction "has the burden of showing by a preponderance of the evidence facts that suggest the amount in controversy requirement is met." *Oshana*, 472 F.3d at 511. *See also Bailey v. ConocoPhillips Co.*, No. 06-677-JLF, 2006 WL 3487655, at *3 (S.D. Ill. Dec. 4, 2006) (stating that "[a] defendant seeking to establish jurisdiction on the basis of diversity must provide 'competent proof' that the amount in controversy exclusive of interest and costs exceeds $75,000."). However, where the complaint does

not establish the amount in controversy, "a good faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana*, 472 F.3d at 511. "The Seventh Circuit [] has suggested several ways this may be done: by contention interrogatories or admissions in state court; by calculation from the complaint's allegations; by reference to plaintiff's informal estimates or settlement demands; or by introducing evidence, in the form of affidavits from the defendant's experts, about how much it would cost to satisfy the plaintiff's demands." *Brandon v. Wal-Mart Stores East, LP*, Case No. 1:19-CV-505, 2020 WL 1443775, at *2 (N.D. Ind. Mar. 24, 2020) (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006); *Malinowski v. Walgreen Co.*, No. 2:08-CV-173, 2008 WL 2704740, at *2 (N.D. Ind. July 3, 2008)). "Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Oshana*, 472 F.3d at 511 (citation and internal quotation marks omitted).

In this case, Plaintiff's original complaint states that he is seeking "an amount reasonable and equitable *in excess* of $10,000.00, plus reasonable attorney's fees and costs of his suit." (Doc. 1-1, p. 3) (emphasis added). It is likely Plaintiff chose an amount in excess of $10,000 to remove the case from Illinois small claims court. Additionally, Plaintiff states that this amount should include "statutory penalties equal to 5% of such unpaid or underpaid wages for each month during which the underpayments have remained unpaid." *Id.* From this information, Defendant argues that the twenty-four months' worth of potential penalties at 5% of the unpaid or underpaid amount applied

to the seven-month period, from October 2022 to May 2023, would meet the jurisdictional amount. (Doc. 31, p. 3). Plaintiff did not file a Reply to Plaintiff's Response, contesting this position. Thus, the Court can only rely on his initial claim in the Motion for Remand. There, Plaintiff merely states that remand is required, "as the jurisdictional amount will not be met . . . [because] Plaintiff has made a claim for wages/commissions of $10,000 plus attorney's fees and expenses." (Doc. 27, p. 1). However, Plaintiff incorrectly cites back to the complaint, which claims an amount *in excess* of $10,000. (Doc. 1-1, p. 3) (emphasis added).

These facts are similar to those in *Midland Management Company v. American Alternative Insurance Corporation*, where the Court found that the defendant had sufficiently alleged a jurisdictional amount exceeding $75,000 when recovery was in part meant to cover future damages. 132 F. Supp. 3d 1014, 1019 (N.D. Ill. 2015). In *Midland*, the plaintiff management company filed suit against the defendant insurance company for indemnification of a claim brought against them by a prior tenant. *Id.* The Court looked at the face of the tenant's state court complaint to consider whether the defendant insurance company demonstrated by a preponderance of the evidence that the amount in controversy exceeded the $75,000 jurisdictional requirement. *Id.* The complaint stated that the tenant sought damages "in excess of $50,000." *Id.* The Court concluded that the damages sought by the tenant for medical injuries, "which were described as including permanent personal injury and current and future pain and suffering and disability and disfigurement – could easily exceed $75,000." *Id.*

Similarly, here, the 5% penalty tacked on to Plaintiff's underpaid or unpaid wages,

suggests that his damages could exceed $75,000.[1] The Court reached this determination after making basic calculations from Plaintiff's Employment Agreement and related documents.[2] According to Plaintiff's Employment Agreement dated October 12, 2022, Plaintiff was an hourly employee, being paid $28.85 per hour. (Doc. 13-1, p. 15). In a standard 40-hour work week, Plaintiff could expect to make $1,154 before taxes. Plaintiff was also entitled to "a sign on bonus in the amount of $9,000 . . . [to be] paid in three installments of $3,000.00 on October 26, 2022, November 28, 2022, and December 26, 2022." *Id*. The Addendum to Plaintiff's employment agreement, dated February 26, 2023, sets out an additional bonus structure. (Doc. 13-2, p. 1). The Addendum states that the "Employee shall receive from Nations Lending a retention bonus in the amount of $40,000" to be paid in a set schedule. *Id.* Plaintiff arguably could claim $20,000 of this retention bonus, as four of the installment dates—March 10, 2023, March 27, 2023, April 10, 2023, and April 26, 2023—occurred before he was terminated.[3] *Id.*

---

[1] The Illinois Wage and Compensation Act ("IWCA") provides that an employee "is entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILL. COMP. STAT. ANN. § 115/14.

[2] Because Plaintiff does not specify in his Complaint how much in excess of $10,000 in damages he is seeking, the Court could only rely on Plaintiff's Employment Agreement and related documents attached as Exhibits to Defendant's Motion to Transfer for insight into the range of possibilities. (Doc. 13-1, 13-2).

[3] The Addendum to Employment Agreement dated February 26, 2023, states that "should employee resign or be terminated for cause prior to completing a vesting period for any bonus or bonus installment, then: a. Employee will forfeit the right to any installments not yet paid or fully vested. b. Employee will be obligated to return the full amount of any bonus installment paid but not fully vested . . . ." (Doc. 13-2, p. 1-2). The Court is not certain whether employee was

Plaintiff was employed by Defendant for approximately 28 weeks—from October 17, 2022, to May 1, 2023. (Doc. 1, p. 1-2). Thus, Plaintiff made approximately $32,312 of hourly wages, plus the $9,000 sign on bonus. He also may be entitled to receive the $20,000 retention bonus. In total, Plaintiff could expect to recover $61,312. The amount in controversy could easily exceed $75,000 when adding the 5% monthly statutory penalty to these underpaid/unpaid wages. The penalty applies from the date Plaintiff filed his civil lawsuit, April 19, 2024.[4] (Doc. 1-1). As of February 2025 (a period of 10 months from the filing of the lawsuit), Plaintiff could expect to recover $30,656 in penalties on these unpaid/underpaid wages (5% of $61,312 = $3,065.60 and multiplied by 10 months = $30,656). This amount will increase as Plaintiff's lawsuit proceeds. This suggests that

---

terminated for cause or without cause. If Plaintiff was not terminated for cause, he could argue that he should also be compensated with the $20,000 retention bonus.

[4]     The Court used the Illinois Department of Labor's resources on the Wage Payment and Collection Act ("IWPCA") to make the penalties calculation. On the Illinois of Department of Labor's Website, the following example calculation is provided:

> An employee files a claim with IDOL on March 1, 2015 seeking $1000 in wages that were due, but not paid, on February 15, 2015. A demand issues from IDOL on June 15, 2015 in the amount sought. If the employer pays within 35 days (that is, by July 20, 2015), the employer is required to pay for a total of $1450 ($1200 to the employee and $250 to IDOL) calculated as follows:
>
> > $1000 in wages to the employee;
> > $200 in damages to the employee (5% x $1000 x 4 months);
> > a $250 administrative fee to IDOL
>
> Note: For each month the employer fails to pay the amount found owing, 5% in statutory damages continues to accrue without limitation on a monthly basis.

*See Wage Payment and Collection Act Penalties*, ILL. DEPT. OF LAB., https://labor.illinois.gov/laws-rules/fls/wpca-penalties.html (last visited Jan. 24, 2025).

Plaintiff could recover $91,968. Plaintiff has not proven so otherwise, despite an opportunity to do so by filing a Reply to Defendant's Response to his Motion to Remand. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand. (Doc. 27).

## MOTION TO TRANSFER

A.     **Legal Standards**

Motions for transfer of venue are governed by the standards set forth in 28 U.S.C. § 1404, which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). Transfer under § 1404(a) is appropriate where "(1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 985 (S.D. Ind. 2016). The decision to transfer a case is left to the discretion of the district court. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

When deciding whether to transfer a case pursuant to § 1404(a), Courts consider case-specific factors like the convenience of the transferee forum to the parties and witnesses, the relative bargaining power of the parties, and the interests of justice. *See Stewart*, 487 U.S. at 29-30. *See also Atlantic Marine Constr. Co. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49, 62-63 (2013); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (citing *Van Dusen*, 376 U.S. at 622)). Ordinarily, courts give substantial weight in favor of the forum in which the plaintiff chose to file the complaint. *In re*

*National Presto Industries, Inc.*, 347 F.3d 662, 663-664 (7th Cir. 2003). The party requesting transfer bears the burden of establishing that the transfer "is clearly more convenient." *Coffey*, 796 F.2d at 219-220.

Even if the transferee forum would be more convenient, a court may still refuse to transfer a case if it would not be in the interest of justice. *See Coffey*, 796 F.2d at 220; *Van Dusen*, 376 U.S. at 625. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system." *Coffey*, 796 F.2d at 221. They include, but are not limited to, the relative congestion of the dockets and the likely speed of going to trial in the respective districts, each court's familiarity with the relevant law, the respective desirability of resolving the dispute in each forum, and the relationship of the community to the controversy. *See In re RYZE Claims Solutions, LLC*, 968 F.3d 701, 708 (7th Cir. 2020).

Notwithstanding the above analysis, "[a] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atlantic Marine*, 571 U.S. at 59-60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). Accordingly, the Supreme Court in *Atlantic Marine* outlined three ways that a valid forum-selection clause changes a court's evaluation of a motion to transfer. First, the Court must give the plaintiff's choice of forum no weight, and the burden shifts to the plaintiff to show the transfer is unwarranted. *Id.* at 63. As the plaintiff has already agreed to a specific forum as part of the contract's bargain, the Supreme Court reasoned that initial choice deserves deference. *Id.* Second, the Court should disregard arguments about the parties' private interests that do not favor the selected forum. *Id.* at 64. The Supreme

Court explained that this is because the parties have waived arguments about inconvenience by previously agreeing to the forum. *Id.* Third, and finally, the Court should consider in its public interest analysis the choice of law rules of the selected forum rather than those of the original venue. *Id.* at 64-65. The Supreme Court reasoned that the purpose of this consideration is to discourage gamesmanship by plaintiffs to secure favorable choice of law rules by filing in a different forum. *Id.*

**B.     Discussion**

Defendant asserts that the forum selection clauses in Plaintiff's Employment Agreement and Addendum require this case to be transferred to the United States District Court of the Northern District of Ohio. (Doc. 13, p. 4).[5] In response, Plaintiff offers a barebones assertion that the Court lacks subject matter jurisdiction and that Defendant's Motion for Transfer must be denied. (Doc. 32, p. 2). However, the Court has already determined that it has subject matter jurisdiction over this dispute. Therefore, the only

---

[5]     Defendant also filed a Motion to Deem Plaintiff's Failure to File a Timely Response Consent to Defendant's Motion to Transfer Under 28 U.S.C. §1404(a). (Doc. 26). Defendant is correct that Local Rule 7.1(a)(5) is applicable, which states that "[i]n civil cases, failure to file a timely response to a non-dispositive motion may be deemed consent to the relief as requested." SDIL L.R. 7.1(a)(5). *See also Scaff v. Ralcorp, Holdings, Inc.*, No. 06-CV-538-DRH, 2006 WL 3210337, at *3 (S.D. Ill. Nov. 6, 2006) (recognizing that Local Rule 7.1(g) "[f]ailure to file a timely response to a motion may, in the court's discretion, be considered an admission of the merits of the motion" applied to defendant's motion to transfer). However, Plaintiff requested an extension of time to respond to the Motion to Transfer as primary counsel for Plaintiff, Mr. Thomas Fagan ("Fagan"), was not admitted to practice in this Court. (Doc. 28, 32). Mr. Fagan then timely filed Plaintiff's Response to Defendant's Motion to Transfer on October 15, 2024. (Doc. 32). Accordingly, using its discretion, the Court **DENIES** Defendant's Motion to Deem Plaintiff's Failure to File a Timely Response Consent to Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a). (Doc. 26).

remaining issue pertains to enforcement of the forum selection clause in the Employment Agreement.

When parties agree "to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine*, 571 U.S. at 62. Neither party contests the validity of the forum selection clause here. Accordingly, the Court turns to the question of whether, in light of the valid forum selection clause, transfer to the Northern District of Ohio is appropriate. The Court concludes that it is not.

The Court begins its interpretation of the forum selection clause by looking to the language of the clause itself. "A forum selection clause is enforceable to the same extent as the usual terms of a contract[] and must be interpreted in accordance with general contract principles." *Continental Casualty Co. v. LaSalle Re Ltd.*, 500 F. Supp. 2d 991, 994 (N.D. Ill. 2007) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006)). When interpreting a forum selection clause, the law designated in the choice of law clause of a contract governs. *See, e.g., Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007) (explaining that "[s]implicity argues for determining the validity and meaning of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears[.]"). Plaintiff's Employment Agreement provides that any attendant disputes "shall be construed in accordance with the laws of Ohio . . ." (Doc. 13-1, p. 11). The Addendum also calls for the "application of Ohio law." (Doc. 13-2, p. 2). Therefore, the Court uses Ohio law in interpreting the forum selection clause.

Ohio law dictates that "[i]n all cases involving contract interpretation . . . courts should give effect to the intentions of the parties as expressed in the language of their written agreement." *Sutton Bank v. Progressive Polymers, L.L.C.*, 163 N.E.3d 546, 552 (Ohio 2020). Furthermore, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* (citing *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)).

A plain reading of the forum selection clause here does not show that the parties intended Ohio be the exclusive venue for disputes arising under Plaintiff's Employment Agreement. The Employment Agreement provides that "[a]ny action or proceeding by either of the parties to enforce this Agreement . . . may be brought in a state or federal court located in the state of Ohio *or the state of the Employee's primary residence, if different . . . .*" (Doc. 13-1, p. 11-12) (emphasis added). Put another way, the forum selection clause dictates that, if the state of Employee's primary residence is not Ohio, venue is proper in the state of the Employee's primary residence. Thus, the language of the Employment Agreement clearly contemplates Plaintiff, an Illinois citizen, bringing this action in Illinois. (Doc. 1-1, p. 1).

The language in the Addendum is somewhat less clear. It states that "[a]ny disputes arising out of this agreement are subject to the dispute resolution provisions contained within Employee's Agreement including the agreement to subject disputes to binding arbitration and *the application of Ohio law and venue.*" (Doc. 13-2, p. 2). The Court sees two possible interpretations of this provision, depending on whether the parties

intended "Ohio" to modify both "law" and "venue," or only the former. The first interpretation would require the application of Ohio law and Ohio venue. This interpretation conflicts with the language of the Employee Agreement. On the other hand, the second interpretation is harmonious with the language of the Employee Agreement as it would require the application of Ohio law but not Ohio venue. A plain reading of the Addendum favors the second interpretation. The language preceding "Ohio law and venue" in the Addendum makes it clear that the parties did not intend to modify the venue provision of the Employment Agreement, but to enforce it: "Any disputes arising out of this agreement are subject to the dispute resolution provisions contained within the Employee's Agreement . . . ." *Id.* As the second interpretation of the Addendum is consistent with the Employment Agreement and does not result in "manifest absurdity," the Court chooses to apply it.

As the Court has concluded that the forum-selection clause permits this case to be brought in either Ohio or Illinois, it now evaluates the motion to transfer in light of the amended § 1404(a) analysis set out in *Atlantic Marine*. First, the Court concludes transfer would be unwarranted because this action was appropriately brought in Illinois as the state of Plaintiff's primary residence. Second, the Court disregards any considerations as to the convenience of the parties because they previously agreed to litigate the case in the state of Plaintiff's primary residence. Furthermore, the parties agreed in the Employment Agreement to "waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue." (Doc. 1-1, p. 11). Third, the Court is not concerned about any "gamesmanship" on Plaintiff's part—*i.e.*, filing this case in Illinois instead of

Ohio to secure more favorable law. The Employment Agreement allows him to file this case in the state of his primary residence instead of Ohio, which is what he did. And, regardless of venue, the Employment Agreement requires the application of Ohio law "to the maximum extent permitted by applicable law." (Doc. 13-1, p. 11). In light of these factors, the Court finds that "the 'interests of justice' is served by holding parties to their bargain." *Atlantic Marine*, 571 U.S. at 66. Accordingly, Defendant's Motion to Transfer (Doc. 12) is **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand (Doc. 27), **DENIES** Defendant's Motion to Transfer (Doc. 12), and **DENIES** Defendant's Motion to Deem Plaintiff's Failure to File a Timely Response Consent to Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (Doc. 26).

**IT IS SO ORDERED.**

DATED: March 17, 2025.

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2025.03.17 09:47:06 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**